UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALAUNDJA FELECIA JOHNSON,

    Plaintiff,

v.                                                                     Case No. 1:19-cv-1024
                                                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her application for disability insurance benefits (DIB).

        Plaintiff's disability history goes back to September 10, 2014, when the Social Security Administration (SSA) issued Notice of Award for Supplemental Security Income (SSI). The Notice stated that "[a]s of August 2014 you met all the rules to be eligible for SSI based on being disabled," but advised her that "[e]ven though you are eligible, no payments can be made at this time because of your income for September 2014." PageID.278. In addition, the Notice appeared to contain an error, stating that "[y]ou were found disabled on January 1, 2004." PageID.278-279.

        Then, on November 21, 2014, the SSA issued a "Notice of Disapproved Claim," which stated in pertinent part:

1

> We are writing about your claim for Social Security benefits. Based on a review of your health problems you do not qualify for benefits on this claim. This is because you are not disabled under our rules.

Notice (ECF No. 12-1, PageID.2585). This Notice appeared based on a determination by a DDS physician, Ashok Kaul, M.D., that plaintiff was not disabled for purposes of her DIB claim. PageID.115-126. While the November 21, 2014, Notice of Disapproved Claim appears to have been sent to plaintiff, defendant admits that this document was not included in the administrative record. Defendant's Brief (ECF No. 12, PageID.2576).

The present case involves plaintiff's later application for DIB which appears to have been filed on March 10, 2015. PageID.349. Plaintiff alleged a disability onset date of May 21, 2014. PageID.37. Plaintiff identified her disabling conditions as post-traumatic stress disorder (PTSD), anxiety-mixed, carpal tunnel-bilateral, tendonitis, arthritis in shoulder, and depression. PageID.351. Prior to applying for DIB, plaintiff completed one year of college and had past employment as a medical clerk, clerk typist, and nurse assistant. PageID.49-50, 352. An Administrative Law Judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on October 12, 2018 (sometimes referred to as the "2018 decision"). PageID.146-161.

On December 3, 2018, the Appeals Council granted plaintiff's request for review, *vacated* the October 12, 2018 decision, and directed the ALJ to "offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." PageID.168-170. On remand, the ALJ held a new hearing (PageID.59-89), reviewed plaintiff's application de novo, and entered a written decision denying benefits on August 20, 2019 (sometimes referred to as the "2019 decision") (PageID.37-52). This decision, which was later

approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

3

of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.     ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 21, 2014, and met the insured status requirements of the Social Security Act

4

through December 31, 2019. PageID.40. At the second step, the ALJ found that plaintiff had severe impairments of migraines, degenerative joint disorder and tendonitis in left shoulder, carpal tunnel syndrome in bilateral supper extremities, obesity, PTSD, depression, and anxiety. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

> The ALJ decided at the fourth step that:
>
> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, and crouch, and occasionally crawl. The claimant can frequently, as opposed to continuously, handle and finger bilaterally. With the left upper extremity, she can occasionally reach overhead and frequently reach in all other directions. The claimant can be exposed to no more than moderate noise levels. She is able to concentrate, persist, and maintain pace to complete simple, routine and repetitive tasks and make simple work-related decisions with normal break [sic]. Regarding the ability to interact with others, she can perform work that has occasional interaction with supervisors and coworkers, but no direct interaction with the public.

PageID.42. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.49-50.

At the fifth step that ALJ found that plaintiff could perform a range of light, unskilled occupations in the national economy. Specifically, the ALJ found that plaintiff could perform the requirements of housekeeping cleaner (400,000 jobs), office helper (330,000 jobs), and production inspector (68,000 jobs). PageID.50-51. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from May 21, 2014 (the alleged onset date) through August 20, 2019 (the date of the decision). PageID.51-52.

### III. DISCUSSION

Plaintiff raised two errors.

> **A.  The ALJ failed in his duty to investigate the facts and develop the arguments both for and against granting benefits; most significantly, he failed to consider that plaintiff had previously been found disabled by the Agency.**

After further review of the record, and the Notice of Disapproved Claim submitted by defendant, plaintiff withdrew this alleged error. Plaintiff's Reply (ECF No. 13, PageID.2589).

> **B.  The ALJ's RFC [residual functional capacity] finding is not supported by substantial evidence; he failed to build an accurate and logical bridge between the evidence of plaintiff's various impairments, which the ALJ found to be severe, and his findings.**
>
> **1.  The ALJ provided no discernible or defensible reason for finding that plaintiff, according to his own findings in his first decision, had greater "hand use" limitations when she had only right hand carpal tunnel impairment, than in the second when she had both right and left hand carpal tunnel impairment.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(e).

In her first error, plaintiff contends that there is an inconsistency between the ALJ's conclusions regarding the "hand use" limitations in the vacated decision (October 12, 2018) and the present decision (August 20, 2019). In the 2018 decision, the ALJ found that plaintiff had a severe impairment of "carpal tunnel syndrome left upper extremity only" and the RFC to "occasionally handle and finger" with the left upper extremity, with no additional restrictions in the right upper extremity. PageID.148, 153. In the 2019 decision, the ALJ found that plaintiff had

a severe impairment of "carpal tunnel syndrome in bilateral supper [sic] extremities" and that she had the RFC to "frequently, as opposed to continuously, handle and finger bilaterally." PageID.40, 42.

Plaintiff contends that in the 2019 decision, while the ALJ acknowledged the existence of plaintiff's bi-lateral carpal tunnel syndrome, he "failed to build an accurate and logical bridge between the evidence and his conclusions" and "identified no particular evidence and offered no specific explanation for why, upon remand, he concluded that she could frequently handle, despite the continued symptoms from her combined left upper extremity impairments and his own previous finding that these impairments limited her to only occasional handling." PageID.2557. In this regard, plaintiff points out that limiting her to only "occasional" handling would significantly reduce the number of jobs she could perform. PageID.2557-2559.

As an initial matter, plaintiff's contention that the ALJ failed to address the differences between the 2018 decision and the 2019 decision is without merit. When the Appeals Council vacated the 2018 decision, that decision ceased to exist.

> When an order is set aside or vacated, the result is the destruction of the order in its entirety. Its effectiveness is ended, the previously existing status is restored, and the effect is the same as though the order had never existed. A vacated order is null and void and has no legal force or effect on the parties or the matter in question.

60 C.J.S. Motions and Orders § 72 (footnotes omitted). *See, generally, Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016) (the law of the case doctrine does not apply to a Social Security claim based upon a ALJ's vacated decision because "nothing in this case was settled [in either] fact or law given the Appeals Council's vacation of the original opinion of the ALJ"). *See Smith v. Commissioner of Social Security*, No. 1:18-cv-1235, 2020 WL 14822374 (W.D. Mich. March 27, 2020) (a vacated ALJ's decision is of no legal effect).

7

Plaintiff's remaining claim is that the ALJ's August 20, 2019 decision "failed to build an accurate and logical bridge between the evidence and his conclusions" that plaintiff could perform frequent handling with both upper extremities. The Court construes plaintiff's claim as challenging the ALJ's decision for lack of articulation.  The Commissioner must provide a statement of evidence and reasons on which the decision is based.  *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).

The ALJ addressed plaintiff's use of her upper extremities as follows:

> The claimant has reported left shoulder pain described as persisted [sic] moderate to severe sharp anterior shoulder pain, worse with overhead activities. An MRI in 2014 revealed minor degenerative changes of the left acromioclavicular joint with minor signal changes within the rotator cuff with possible mild tendinopathy (Exhibit 1F/14-17). The claimant demonstrated reduced range of motion due to pain during a June 2014 physical examination and similar in June 2018. An x-ray in June 2018 revealed no acute osseous abnormality (Exhibit 10F/22). She was referred to physical therapy. The claimant also testified to bilateral hand pain and numbness on a daily basis. A September 2014 EMG and nerve conduction study revealed bilateral median neuropathy at the wrist, moderate in severity and left ulnar neuropathy (Exhibit 3F/1-5). In November 2014, the claimant underwent a left carpal tunnel release. While she alleges ongoing bilateral upper extremity symptoms, including the inability to sleep on her left side, she has not engaged in additional direct treatment including physical therapy, injections, or more than conservative treatment. Accordingly, she is able to engage in light work and can frequently as opposed to continuously handle and finger bilaterally. Due to the tendonitis in the left shoulder, she can occasionally reach overhead, and frequently reach in other directions. These limitations do not preclude all work activity.

PageID.43.

The ALJ also addressed the opinion evidence of a nurse practitioner at the Department of Veteran Affairs (VA):

> In July 2014, VA source Denise Green, N. P., indicated the claimant was unable to return to her job due to a left hand problem. I find these restrictions were temporary in nature, and the record did not indicate they would be permanent in nature and were only directed at one employment position. In addition, the opinion does not provide a functional analysis of what the claimant can still do despite her conditions. The record does not reflect ongoing treatment for her left hand and the record does not support her bilateral hand limitations preclude all work activity. Accordingly, I assign Ms. Green's opinion, who is an unacceptable medical source, little weight as it is not consistent with the record as a whole.

PageID.47.

The ALJ adequately articulated his analysis of plaintiff's upper extremity limitations and reasons for finding that plaintiff "can frequently, as opposed to continuously, handle and finger bilaterally." The ALJ's finding is supported by substantial evidence and this Court can trace the path of his reasoning. Accordingly, plaintiff's claim of error is denied.

**2. The ALJ again failed to account in the RFC finding for plaintiff's limitations in concentrating, persisting, or maintaining pace.**

The issue before the Court is whether the ALJ's RFC adequately accounts for plaintiff's limitations in "concentrating, persisting, or maintaining pace." The finding referred to by plaintiff was made at step three of the sequential evaluation, when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of listed impairments 12.04 and 12.06. PageID.41.

In determining that plaintiff did not satisfy the paragraph "B" requirements, the ALJ stated in pertinent part:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must

> result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis. . . .
>
> The claimant also demonstrates moderate limitations with concentrating, persisting and maintaining pace. She has reported motivation issues and reported she often does not engage in much activity mainly due to reported pain and mental health impairments. She also reports she focuses largely on her daughter's health issues. However, she reports the ability to use a computer, manage her own finances, perform household chores, and drive a car. She has been primarily responsible for her daughter's care including her medical appointments. Accordingly, the record does not reflect more than moderate limitations with concentrating, persisting, and maintaining pace. . .

PageID.41.

RFC is a separate determination made at step four of the sequential evaluation. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014). In addressing plaintiff's RFC at step four, the ALJ found that plaintiff had the following non-exertional impairments:

> The claimant can be exposed to no more than moderate noise levels. She is able to concentrate, persist, and maintain pace to complete simple, routine and repetitive tasks and make simple work-related decisions with normal break [sic]. Regarding the ability to interact with others, she can perform work that has occasional interaction with supervisors and coworkers, but no direct interaction with the public.

PageID.42.

In making these determinations, the ALJ addressed the distinction between the "paragraph B" criteria and the RFC, stating that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential

10

evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental functional analysis.

PageID.42.  As the Sixth Circuit explained,

> [T]he finding at step three is not a residual functional capacity finding. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.A. That finding is formulated at step four, which "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C" of the Listings to be considered at step three. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Thus, an ALJ does not necessarily err by finding moderate limitations at step three but excluding those limitations in a "residual functional capacity" analysis at steps four and five.

*Wood v. Commissioner of Social Security*, No. 19-1560, 2020 WL 618536 at *3 (6th Cir. Jan. 31, 2020).  *See Kraus v. Colvin*, No. 13-C-0578, 2014 WL 1689717 at *15 (E.D. Wis. April 29, 2014) (Because three different functions in paragraph "B" are listed in the disjunctive, "a check in the moderate box does not indicate whether the limitation applies to one, two, or all three functions. . . . the mental residual functional capacity assessment requires a more detailed assessment than the preliminary assessment used at steps 2 and 3 to determine whether the impairment is severe and meets a listing.").

Here, the ALJ's RFC accounted for plaintiff's mental impairments. Plaintiff did not present any medical opinions with specific functional limitations with respect to her ability to concentrate, persist, and maintain pace. *See Kepke v. Commissioner of Social Security*, 636 Fed. Appx. 625, 635 (6th Cir. 2016) (plaintiff did not cite any evidence in the record "that provides for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work"); *Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx. 426, 436-37 (6th Cir. 2014) (limiting a claimant to "simple, routine, and repetitive tasks" adequately conveyed the claimant's moderately-limited ability "to maintain attention and concentration for extended periods," where claimant's doctor "did not place any concrete

functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks"). *See also*, *Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner). Accordingly, plaintiff's claim of error is denied.

> **3. The ALJ also failed to build an accurate and logical bridge between the evidence of migraine headaches and his RFC finding.**

The ALJ addressed plaintiff's migraines as follows:

> The record also reflects the claimant's reports of migraine headaches. She was referred for a neurology consult in November 2014 (Exhibit 7F/125-128). The claimant reported a long history of headaches, describing them as occurring all over her head and traveling to the back of her head and squeezing. She added a headache could last one to two days, occurring on and off with each episode lasting one to two hours experiencing nausea and requiring a dark room and sleeping. The claimant discussed using Imitrex and Tramadol, but did not find relief. A December 2016 MRI of the brain found no acute infarcet [infarct], interacranial [intracranial] hemorrhage, mass effect, midline shift, or abnormal intracranial enhancement. There were very few punctate T2/FLAIR hyperintense foci within the subcortical white matter of bilateral frontal lobes, nonspecific and may represent minimal early chronic microvascular ischemic changes, sequelae of migraine disorder or other inflammatory/infectious small vessel vasculopathy. There was no convincing evidence of demyelination/multiple sclerosis (Exhibit 10F/115). In June 2018, the claimant reported headaches every three days, but indicated they were mostly stress headaches and she did not take any medications (Exhibit 10F/18). She was prescribed Imitrex for relief (Exhibit 10F/20).

> The claimant testified a more recent neurological consult and added experiencing migraines on a daily basis. However, the record does not reflect emergent treatment relating to her symptoms. She is able to maintain her daily activities and help care for her adult daughter. As her daughter suffers from seizure like symptoms, the claimant is required to be alert when around her daughter in case of a medical emergency. I find the claimant can be exposed to no more than moderate noise levels due to migraine symptoms.

12

PageID.43-44.  *See also*, PageID.2322-2323.

Plaintiff contends that "[d]espite accepting the evidence that her migraines require her to lie down in a dark room and sleep, and that they occur with a frequency that is relevant to her ability to maintain regular attendance, [the ALJ] failed to account for these facts in his RFC finding."  Plaintiff's Brief (ECF No. 11, PageID.2561).  In this regard, plaintiff points to the ALJ's question posed to the vocational expert (VE) which established that one absence per month would be work preclusive:

> [ALJ].  How about missing work, what would be the employer tolerance son [sic] absenteeism?
>
> [VE].  And only an opinion and only for unskilled work.  I don't believe – nothing more than average of maybe one absence per month on a continuing basis.

PageID.83.

Contrary to plaintiff's contention, the Court finds no reference in the ALJ's decision to medical evidence supporting plaintiff's alleged need to lie down in a dark room at a frequency which would be work preclusive.  Plaintiff does not point to any physician restrictions with respect to the migraines.  Rather, plaintiff relies on a report of a missed psychologist appointment in July 2014 due to shoulder pain, migraines and stomach pains (PageID.670), a cancelled physical rehab appointment on June 24, 2014, due to a bad headache (PageID.684), and a request for Motrin and Vicodin on May 1, 2014, which referenced that she had been off work for one day ("since yesterday") with shoulder pain and migraines (PageID.702). Based on this record, the ALJ's RFC with respect to plaintiff's migraine headaches is supported by substantial evidence.  Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith. A judgment consistent with this opinion will be issued forthwith.

Dated: March 22, 2021                                /s/ Ray Kent
                                                                                                       RAY KENT
                                                                                                       United States Magistrate Judge